IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NOAH LEASK and APC DATA ANALYTICS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> GREG ROBERTSON, Individually, and d/b/a/ VENDOR ALLEY, and WOOLLEY ROBERTSON GROUP, INC. d/b/a W+R STUDIOS, d/b/a CLOUD CMA, d/b/a VENDOR ALLEY <br><br> Defendants. | Civil Action No.: 2:21-cv-02367-DCN <br><br><br> **COMPLAINT** <br><br> **(JURY TRIAL DEMANDED)** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Noah Leask and APC Data Analytics, LLC in support of his Complaint against Defendants Greg Robertson, Individually and d/b/a Vendor Alley, Woolley Robertson Group, Inc. d/b/a W+R Studios d/b/a Cloud CMA, state the following.

**NATURE OF THE ACTION**

1. Plaintiffs and Defendants are both the creators and owners of real estate analytic software tools. They are, and/or were, competitors, purveying the same software tools, in the same real estate market, targeting the exact same customer data base: Real Estate MLS Companies.

2. This action arises out of Defendants' jointly and severally publishing and directing a series of false defamatory accusations about Plaintiffs, in the form of direct, targeted communications and/or "open letters", to Defendants', targeting Plaintiffs in the forum State of South Carolina, and injuring Plaintiffs in the forum State of South Carolina,

Page **1** of **19**

all while intending intended these false and defamatory allegations to be simultaneously viewed and consumed by their shared customers in the real estate industry.

3.      Defendants regularly use Vendor Alley to promote their potential customers in the real industry.  Defendant Greg Robertson, acted on behalf of his companies, Woolley Robertson Group, Inc. d/b/a W+R Studios, d/b/a Cloud CMA, when he negligently published false and defamatory statements about Plaintiffs on a web site owned and/or operated by Defendants, Vendor Alley, which admittedly posts "dirt", or gossip, about the real estate industry, and in this case, about its competitors.

4.      These false and defamatory statements accuse and libel Defendants of **a) criminal acts** (including Harassment, Assault and Aggravated Assault, Domestic Violence, Murder, Attempted Murder, Arson, Reckless Driving, Torture, and/or Stalking); **b) unfitness for their occupation**; and **c) insidious disease** (including Mental Illness, and/or Drug Addiction), all of which proximately caused damages to the Plaintiffs in the form of general reputational and character damages, mental anguish, humiliation, anxiety, health problems, and loss of financial valuation, leading to the ultimate closure of Defendants' corporate competitor.

5.      Defendants claim to have publicly aired these false and defamatory statements about Plaintiffs, in retaliation against Plaintiff, when they allegedly misconstrued a "fist bump" greeting emoji, 👊 , contained in private messages from Plaintiff Leask to four officers/supervisors of Defendants.

6.      Acting on behalf of Defendants, Defendant Robertson directly and publicly addressed Plaintiff Leask on vendoralley.com, "I may be over-reacting, but here's the thing, **you are fucking with my people dude**." [profanity and bold-faced type are exact

quotations].

7. Defendants subsequently commenced publishing the above-referenced false, defamatory, and libelous statements about, and directed as an open communication to Plaintiffs, on vendoralley.com.

## PARTIES

8. Plaintiff Noah Leask ("Leask") is a resident of, and is domiciled in Charleston, South Carolina. Noah Leask is one of the founders and current sole owner of APC Data Analytics, LLC.

9. Plaintiff APC Data Analytics, LLC ("APC") is a South Carolina company incorporated in South Carolina with its principal place of business and registered office and mailing address in Charleston, South Carolina.  APC Data Analytics is a software development company, created to develop software tools for the real estate industry.

10. Defendant Greg Robertson ("Robertson") is a resident of and domiciled in the State of California.  Defendant Robertson owns and manages the internet the real estate blog site, vendoralley.com - "Vendor Alley – Where Real Estate Gets Its Dirt". Vendor Alley is an agent of, and a marketing platform for, Woolley Robertson's software products.[1]

11. Defendant Robertson is also a co-founder of the Defendant W+R Studios, and at the time of these events was co-owner of Woolley Robertson Group, Inc.

12. Robertson by and through Vendor Alley, uses Vendor Alley as a promotional tool and alter-ego of Defendant Woolley Robertson Group, Inc., and/or acts as an agent

---

[1] Upon information and belief, Vendor Alley is not a separate corporation, but is simply a d/b/a, or alter ego, of Robertson and W+R.  Plaintiffs reserve the right to amend these allegations should it be discovered Vendor Alley has a separate corporate existence.

Defendant Woolley Robertson Group, Inc., for the purpose of promoting its brands, such as W+R Studios and Cloud CMA, and/or for cultivating the brand and image of Defendant Woolley Robertson Group, Inc., and/or its products in the real estate marketplace.

13.     Defendant Woolley Robertson Group, Inc. d/b/a W+R Studios, d/b/a Cloud CMA ("W+R"), d/b/a vendoralley.com, is incorporated in California.  Defendant W+R was registered to do business in the State of South Carolina, had a physical office in South Carolina, had employees headquartered in South Carolina, and has continuous and ongoing business and contractual relationships throughout the State of South Carolina, including but not limited to contracts for business with CHS Regional MLS, Coastal Carolinas AOR, Consolidated MLS, Hilton Head Island MLS, Spartanburg Association of REALTORS, The Greater Greenville Association of REALTORS, Western Upstate Association of REALTORS.

14.     At all relevant times Defendant Robertson, by and through his defamatory publications on vendoralley.com, acted as an agent, employee, and/or alter-ego for Defendant W+R.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

16.     This Court has both general and specific personal jurisdiction over Defendants pursuant to S.C. Code Ann. §36-2-803 (1976, as amended), which extends jurisdiction to the full extent permissible under the Due Process Clause of the United States Constitution because this action arises out of Defendants' actions in South

Carolina, because Defendants injured Plaintiff, Plaintiff's reputation, and Plaintiff's business in South Carolina and because solicitation activities were carried on within South Carolina by or on behalf of Defendants at the time of the injury.

17.     Defendants expressly aimed and purposefully aimed and directed their defamatory statements at and to Plaintiffs Noah Leask, a South Carolina resident (and against APC, a company headquartered in South Carolina), such that the brunt of the injury would be felt by Plaintiffs in South Carolina.

18.     Defendants published their defamatory statements on a real estate blog on a web platform that was purposefully directed toward residents of South Carolina.  In addition, by directing the blog post toward residents of South Carolina, Defendants repeatedly defamed Plaintiffs to South Carolina residents, such that Defendants should reasonably expect to defend their actions in South Carolina courts.

19.     In addition, Defendant W+R domesticated its incorporation in South Carolina, with physical offices and employees in South Carolina. Upon information and belief Defendant Robertson and Defendant W+R regularly conducts business with, and has entered into, long-term contracts with businesses that are headquartered, incorporated, and/or registered to do business throughout the entire State of South Carolina.  These businesses include, but are not limited to, the following: CHS Regional MLS; Coastal Carolina AOR; Consolidated MLS; Hilton Head Island MLS; Spartanburg Association of REALTORS; The Greater Greenville Association of REALTORS®; Western Upstate Association of REALTORS.  Defendant W+R is providing data analytic services regarding the sale of real property in South Carolina, of which Plaintiffs were involved in a directly competing business to the exact same potential customers.

20. Defendants defamed Plaintiffs in the State of South Carolina by directing their defamatory publications directly to the Plaintiffs in the forum state, as direct communications with Plaintiffs for all the world to see, Defendants also directed their publications toward Plaintiffs employees, Plaintiffs' board members and officers, and Plaintiffs' investors, all of whom are South Carolina residents, such that Defendants should anticipate being hailed into court in South Carolina.

21. Moreover, Defendants directed their defamatory publications to both Plaintiffs and Defendants' common client customer base the South Carolina MLS market, which includes, but is not limited to: CHS Regional MLS; Coastal Carolina AOR; Consolidated MLS; Hilton Head Island MLS; Spartanburg Association of REALTORS; The Greater Greenville Association of REALTORS®; and Western Upstate Association of REALTORS, each of whom Defendants have continuous and systematic contractual contacts and business relations with in the forum State of South Carolina, such that Defendants should anticipate being hailed into court in South Carolina.

22. Plaintiffs' damages and injuries proximately caused by Defendants, was primarily felt, experienced, and occurred, in the forum State of South Carolina.

23. Venue in this district is proper pursuant to 28 U.S.C. §139l(b) because Plaintiffs reside in the subject venue, a substantial part of the damages were suffered by and felt by Plaintiffs in this venue and forum, the greatest majority of witnesses in the case are in the subject venue and forum, and because Defendants are subject to the Court's personal jurisdiction in this district.

**FACTS**

24. Beginning on or about May 6, 2020, Defendants negligently, carelessly,

recklessly, and/or wantonly, published libelous communications about Plaintiffs, were styled as communications from Defendants directed at/toward Plaintiffs in South Carolina, and intended to be viewed Plaintiffs co-employees, investors, board members, peers and customers in South Carolina, via Defendants' self-promotional blogsite vendoralley.com - "Vendor Alley – Where Real Estate Gets Its Dirt".

25. Upon information and belief, the Vendor Alley blogsite's sole purpose is to regularly promote, publicize, and advertise the business of Defendants Robertson and W+R, to the real estate industry, on the Vendor Alley blogsite.

26. Upon information and belief, Defendant W+R is aware of, condones, and authorizes Defendant Robertson to produce content on the Vendor Alley blogsite, as part of Robertson's responsibilities for Defendant W+R, so that Defendant Robertson may further Defendant W+R's marketing and advertising reach to the public, through the Vendor Alley blogsite.

27. Upon information and belief, when Defendant Robertson publishes content on the Vendor Alley blogsite, he does so as an alter-ego of, as an agent of, and/or in the course and scope of his employment with, Defendant W+R.

28. Defendant W+R has a duty to responsibly supervise, monitor, and edit, Defendant Robertson's publications on the Vendor Alley blogsite.

29. On or about May 6, 2020, Defendants published, on Vendor Alley, an open communication to Plaintiffs, titled "A Message to Noah T. Leask, CEO of APC Data Analytics".

30. In the "Message to Leask and APC", Defendants embedded snapshots of private LinkedIn messages Leask had sent to the owners and officers of Defendant W+R.

31. Defendants publicized Plaintiffs' private communications, via the Vendor Alley blogsite, and falsely libeled Plaintiffs by accusing Plaintiffs of criminally harassing, threatening, intimidating, attacking, and/or assaulting employees of Defendants.

32. Subsequent to publishing the May 6, 2020, false and defamatory "Message to Leask and APC", Defendants again commented on their own defamatory Vendor Alley publication, and added to the defamatory publications, by commenting on, and thus, publishing on the Vendor Alley blog site, a threat, and direct, targeted communication to Plaintiffs, to report Plaintiffs to South Carolina, law enforcement, whereby Defendants falsely and publicly reinforced the false allegation that Plaintiffs engaged in criminal conduct of intimidation: "I have the number of the Mount Pleasant, SC Police Station, 843-884-4176 and will report you."

33. On or about May 8, 2020, Defendants published a blog on Vendor Alley, stating that the May 6, 2020, "Message to Leask and APC" publication, "was the biggest single day of traffic in Vendor Alley history", and hyperlinking back to, and, thus re-publishing, the defamatory May 6, 2020, "Message to Leask and APC" publication.

34. On or about May 12, 2020, Defendants again published a private LinkedIn communication from Plaintiffs to Defendants, titled "Noah T. Leask of APC Data Analytics is still sending me threatening messages", and falsely and defamatorily accused Plaintiffs of criminal assault and/or threatening physical assault, while also publishing that Plaintiffs are not fit for their occupation or business. Again, this publication was styled as a direct communication to Plaintiffs in the State of South Carolina, while published to the world.

35. Subsequent to publishing the May 12, 2020, false and defamatory "Leask of APC sending threatening messages", Defendants again commented on their own

defamatory Vendor Alley publication, and added to the defamatory publications, by falsely and defamatorily publishing that Leask had a brain injury and/or a "drug problem".

36. Then on May 12, 2020, Defendants published to the Vendor Alley blogsite, a blog titled, "Noah T. Leask appears to have been fired as CEO of APC Data Analytics for his inappropriate behavior". The title of the blog was false and defamatory in that Leask was not fired, and this states that Leask was unfit for his business or occupation.

37. Moreover, the May 12, 2020, "Leask fired" blog falsely and defamatorily published that LinkedIn, as a company, "doesn't find Noah T. Leask's behavior of sending inappropriate and threatening messages acceptable", since Defendants believed that Leask's LinkedIn profile had completely disappeared. Defendants later retracted this false and defamatory statement.

38. Further, the May 12, 2020, "Leask fired" blog, clearly publishes that Defendants intend their defamatory publications about Plaintiffs to be consumed by the real estate industry as factual "reporting".

39. On or about May 14, 2020, Defendants published another false and defamatory blogpost, titled "Based on a true story…". Defendants typed the word "UNHINGED" in all caps. Below the word UNHINGED, Defendants inserted a YouTube trailer for a movie called "*Unhinged*", starring Russell Crowe. See below.



40. The title of the "Unhinged" movie, juxtaposed with Defendants' re-typing in ALL CAPS of the word "*UNHINGED*", would lead a reasonable reader/viewer to believe that Leask is mentally unstable.

41. Below the "*Unhinged*" trailer clip, Defendants published, "The guy in the truck reminds me of someone, I just can't put **my finger on who it is** though…". The emboldened, highlighted blue, phrase "my finger on who it is", is a hyperlink to Defendants' May 12, 2020, "Leask fired" blog, republishing those defamatory publications. The hyperlink directs to Defendants' prior defamatory article, posted on Vendor Alley:



42. Any viewer of this blogpost, "*Unhinged*" trailer clip, and hyperlink to

defamatory article about Plaintiffs and photo of Leask, would reasonably draw the conclusion that the false and main character played by Crowe, is "based on a true story …" or Leask, which is a defamatory allegation by Defendants about Leask's criminal conduct, and mental instability. Defendants intended the above picture of Leask, with a beard, to draw a physical resemblance to the below picture of Russel Crowe's bearded "*Unhinged*" character from the movie/trailer clip.



43. The Trailer, and movie, shows the "*Unhinged*" main character, which Defendants allege and published is, "Based on a true story…" of Leask, engaged in the following criminal activities:

   a. Assault and Battery and Attempted Vehicular Homicide (the below scene from the movie/trailer, is of Russell Crowe's "Unhinged" character running over a pedestrian with his vehicle);



   b. Breaking and Entering and Domestic abuse (the below scene from the movie/trailer, is of Russell Crowe's "*Unhinged*" character breaking into his ex-wife's home with an axe, and subsequently murdering her);



c. Arson (the below scene from the movie/trailer, is of Russell Crowe's "*Unhinged*" character breaking into his ex-wife's home with an axe, and subsequently murdering her, and setting the home on fire);



d. Theft, Stalking, and Reckless Driving (the below scene from the movie/trailer, is of Russell Crowe's "*Unhinged*" character driving recklessly, while holding a mobile phone he stole from a victim, while stalking the victim);



e. Assault and Battery of a High and Aggravated Nature and Attempted Murder (the below scene from the movie/trailer, is of Russell Crowe's "*Unhinged*" character torturing a victim and setting the victim on fire in an attempt to murder the victim);



    f.   Murder (the below scene from the movie/trailer, is of Russell Crowe's "*Unhinged*" character murdering a victim);



    g.   And of being mentally unstable and psychotic (the below scene from the movie/trailer, is of Russell Crowe's "*Unhinged*" character being portrayed as, and literally accused by the protagonist of being a "psycho");



    44.   Upon information and belief, Defendants have published other libelous and/or slanderous statements about Plaintiffs, in connection with these events, and/or

caused others to republish these defamatory statements.

45. As a result of Defendants' publications, Plaintiffs' South Carolina peers, co-workers, and board members were immediately flooded with text messages and LinkedIn communications, re-publishing Defendants' defamatory comments and indicating that readers of Defendants defamatory publications were fired up and cutting business ties with Plaintiffs.  Plaintiffs' South Carolina peers, co-workers, and board members also noted that the Defendants' false and defamatory blog publications, had been republished on other social media platforms.

46. Some commenters on the Vendoralley.com website, concerning Defendants' defamatory publications, are as follows:

   a. "I was relieved to find I wasn't connected with Noah (as I shared the link with people I knew who were)";

   b. "The comments [on Defendants defamatory publications] were a whos (sic) who of real estate!";

   c. "This guy [Leask] is off his meds";

   d. "I … severed my ties [to Plaintiffs] on LinkedIn.";

   e. "As a result of this I will make sure he [Leask] and I don't cross paths.";

   f. "I would be very hard pressed to consider APC," based on the publications.;

   g. "What a sad excuse for a businessperson.";

   h. "Great lesson on how to destroy your company reputation.";

   i. "Sometimes this reputation management book writes itself.";

   j. "Do we know if he [Leask] suffers from mental illness or possibly has a brain injury?"; and

   k. Referring to Leask as "violent" and "predatory".

47. That Defendants' actions, publications, and libelous and defamatory

statements were directed toward Plaintiffs' forum state of South Carolina.

48. That the above allegations materially and substantially and proximately causing the Plaintiffs damages, in the form of general reputational damages, humiliation, embarrassment, mental anxiety, distress, medical bills, and other special damages such as the finder of fact shall find to be reasonable and necessary to make the Plaintiffs whole, but which include lost business income, lost contractual relationships, and/or lost business value.

## FOR A FIRST CAUSE OF ACTION
### (Defamation, Libel, Slander)

49. Plaintiffs repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

50. Defendants have negligently libeled and slandered Plaintiffs numerous times including, but not limited to, the above published statements regarding Plaintiffs, all of which are completely false.

51. Plaintiffs are neither public figures nor are these matters of public concern.

52. Defendants have not acted under the auspices or protections of any privileges, qualified, absolute, or otherwise.

53. Defendants have published these false and defamatory statements with negligence, carelessness, wantonness, recklessness, and with a reckless disregard for the truth, such as would constitute a finding of actual malice.

54. For all intents and purposes under these allegations, Robertson was acting with actual, and/or apparent authority for, or on behalf of, Woolley Robertson Group, Inc. d/b/a W+R Studios, d/b/a Cloud CMA ("W+R").

55. As a result of Defendants' multiple defamations of Plaintiffs, Plaintiffs are

entitled to judgment against Defendants for an appropriate amount of actual, compensatory, general, special, presumed, and punitive damages, as well as an award of the injunctive relief described below.

## FOR A SECOND CAUSE OF ACTION
**(Negligence/Negligent Supervision & Training)**

56. Plaintiffs repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

57. Defendants owe a common law duty to Plaintiffs to prohibit, and/or to properly supervise and/or train Defendant Robertson, from using Vendor Alley, a media/marketing/public relations arm, or extension of Defend\ant W+R, from using corporate assets and/or employees to engage in conduct and/or actions, as set forth in the prior allegations, to publish false and defamatory misrepresentations to the community at large, to Plaintiffs' peers, co-workers, board members, clients and potential clients.

58. Defendants owe a common law duty to Plaintiffs to supervise and train Defendant Robertson, by and through Vendor Alley, on the proper use of corporate assets and employees to defame persons through the company's self-promotional and marketing efforts, such as would not cause harm to one's reputation and character.

59. Defendants have breached those duties to Plaintiffs, as set forth in detail above.

60. Plaintiffs have suffered damages as a direct and proximate cause of the breach, and is entitled to actual, compensatory and punitive damages.

## FOR A THIRD CAUSE OF ACTION
**(Permanent Injunction)**

61. Plaintiffs repeats and realleges each of the foregoing paragraphs as if set

forth fully herein.

62. Defendants' conduct has caused, continues to cause, and will continue to cause irreparable harm.

63. Defendants have stated they will continue, and it is believed by these Plaintiffs that Defendants will continue to engage in harassing and defamatory conduct, speech, and publications, including posting false and defamatory statements regarding the Plaintiffs in online and in social media.

64. Plaintiffs are entitled to temporary and permanent relief enjoining Defendants, from, among other things, harassing plaintiffs, defaming Plaintiffs, threatening Plaintiffs, interfering with Plaintiffs' business relations, and/or publishing untrue and malicious statements about Plaintiffs.

65. It is anticipated that Plaintiffs will prevail on their claims against Defendants.

66. An injunction will cause no undue burden on the Defendants, and the granting of an injunction will not cause any financial harm or loss to Defendants.

### FOR A FOURTH CAUSE OF ACTION
### (Outrage/Intentional Infliction of Emotional Distress)

67. Plaintiffs repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

68. In the alternative, to Plaintiffs causes of action sounding in negligence, Plaintiffs allege that Defendants intentionally or recklessly acted to inflict severe emotional distress upon Plaintiffs.

69. That Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency.

70. That the Defendants' actions caused Plaintiff Leask emotional distress that

was so severe that no reasonable man could be expected to endure it.

71.  As a result of Defendants' multiple acts of outrage, Plaintiffs are entitled to judgment against Defendants for an appropriate amount of actual, compensatory, general, special, presumed, and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter an award of damages in Plaintiff's favor that exceed Seventy-Five Thousand and 00/100 Dollars ($75,000.00), against Defendants, as follows:

(1) Awarding Plaintiffs compensatory, general, special, and presumed damages in an amount to be determined by the trier of fact;

(2) Awarding Noah Leask punitive damages in an amount to be determined by the trier of fact;

(3) An award of permanent injunctive relief; and

(4) Such other and further relief as the Court deems appropriate.

(Signature Lines on the Following Page)

BREWER LAW FIRM, LLC

*/s/ Barrett R. Brewer*

_____
Barrett R. Brewer, Esq.
Amanda McKendrick, Esq.
P.O. Box 1847
510 Mill Street #2B (29464)
Mt. Pleasant, SC 29465
o: (843) 779-7454
f: (843) 779-7456
e: barrett@brewerlawfirmsc.com
e: amanda@brewerlawfirmsc.com
Attorneys for the Plaintiffs

AND

PHIPPS LAW FIRM, LLC

*/s/ Edward L. Phipps*

_____
Edward L. Phipps, Esq.
Mark Huber, Esq.
571 Savannah Highway
Charleston, SC 29407
o: (843) 300-4444
f: (843) 300-4949
e: Edward@PhippsFirm.com
e: Mark@PhippsFirm.com
Attorney for the Plaintiffs

July 30, 2021

Charleston, South Carolina